UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SHELBY THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-250-R |
| | ) | |
| STATE OF OKLAHOMA, ex rel. | ) | |
| DEPARTMENT OF CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff was fired from her job at the Oklahoma Department of Corrections after a for-cause drug test came back positive for amphetamines. She contends a prescription medication she uses to treat ADHD, and of which the ODOC was previously notified, caused the positive result. She asserts claims against the ODOC for discrimination on the basis of an actual or perceived disability in violation of the Rehabilitation Act and the Oklahoma Anti-Discrimination Act. The ODOC filed a Motion for Summary Judgment [Doc. No. 27] and Plaintiff filed a Motion for Partial Summary Judgment Precluding Defendant's Failure-To-Mitigate Defense [Doc. No. 29]. Both motions are fully briefed and at issue [Doc. Nos. 38, 39, 40, 41].

### *Factual Background*

Plaintiff was employed as a probation and parole officer for the Oklahoma Department of Corrections. In December 2019, Plaintiff was diagnosed with ADHD. *See* Def's Br. ¶ 1. She promptly informed her then-supervisors of her treatment with the

1

prescription medication Adderall and the information was added to her supervisory file. *Id.* ¶ *2*; *see also* Def.'s Ex. 2.

A little over four years later, on January 16, 2024, Plaintiff's supervisor, Johnathan Adkins, submitted a "For-Cause Report Form" requesting that Plaintiff complete a drug screening. *Id.* at ¶¶16-19; Def.'s Ex. 12. The Report Form states that Mr. Adkins smelled marijuana in Plaintiff's office on two occasions, she had multiple tardies, and she had several documented disciplinary issues. ODOC policy provides that the agency may require an employee to take a drug test "at any time it reasonably believes that the employee may be under the influence of drugs." Def.'s Ex. 13.

That same day, ODOC human resources employee Justin Guidice scheduled the drug test to be completed at an offsite facility. Def.'s Br.  24. Mr. Adkins informed Plaintiff she was being sent to take a for-cause drug test, relieved her of her badge and gun, notified her she was being placed on suspension with pay, and drove her to the drug testing facility. *Id.* ¶ 26. At that time, Plaintiff told Mr. Adkins about her Adderall prescription and her concerns that it might show up on a drug test and he reassured her that if the only thing that showed up was her medication, it would be fine. Pl.'s Ex. 3 at 52:14-55:2. Plaintiff completed the drug test at the drug-testing facility and signed a chain of custody form. The chain of custody form listed her daytime phone as the main office number at her work and listed her evening phone as her cell number. Def.'s Ex. 20; Pl's Resp. Br. ¶ 37. Whether the phone numbers were pre-filled or filled out by Plaintiff is disputed. Plaintiff was placed on suspension with pay pending the outcome of the drug test. Def.'s Br. ¶ 30.

The results of the drug test are interpreted by a Medical Review Officer, "who is

2

responsible for receiving results from a testing facility" and "who has knowledge and training to interpret and evaluate an individual's test results together with the individual's medical history and any other relevant information." Okla. Stat. tit. 40, § 552(11); *see also* Def.'s Br. ¶ 33; Def.'s Ex. 13 at ¶ I(D). The MRO Review procedure provides that upon receipt of a positive result, the MRO will make "at least three attempts to contact the donor." Def.'s Br. ¶¶ 34, 50; Def.'s Ex. 19. Once reached, the donor is interviewed to determine if a legitimate prescription explains the positive result and is given the opportunity to provide medical records substantiating the prescription use. Def.'s Ex. 13. If the donor is not reached, the results are released to the employer within three business days of the lab report with the notation "unable to contact donor." *Id.*

In addition to the MRO Review procedure, ODOC maintains a policy that governs for-cause drug testing. Def.'s Ex. 13. The policy provides that "[e]mployees will have an opportunity to provide any information which the employee considers relevant to the test" and that "[s]uch opportunity will be provided, if the need arises, when the employee is contacted by the MRO." Def.'s Ex. 13 ¶ III(B)(4). The policy further states that the responsibilities of the local human resources coordinator include "[a]ssisting the MRO in contacting the employee for purposes of verification." *Id.* ¶ IV(A)(2)(f). When contacted by the MRO, the coordinator must make a minimum of three call attempts over a 24 hour period, advise the employee that failure to contact the MRO will result in a report of a positive result, and, if attempts at personal contact fail, provide the information by practical alternative means, such as voice mail, email, or letter. *Id.*

Plaintiff's drug test came back positive for amphetamines. Def.'s Ex. 25. The

MRO's Memorandum indicates that the following call attempts were made:

**Donor Contact Information**

**Donor Call**

| Call Date | Call Initiation Type | Call Result |
|---|---|---|
| 1/24/2024 11:13:23 AM | Outbound | Left message on machine/voicemail |
| 1/24/2024 3:19:47 PM | Outbound | No answer |
| 1/25/2024 8:54:08 AM | Outbound | No answer |

Def.'s Ex. 22. The document does not specify whether the MRO called the daytime or evening phone number listed on the chain of custody form. Mr. Adkins testified that, at some point, the drug test company called the ODOC office, indicated they were having trouble getting in contact with Plaintiff, and he gave them "the number I had for her." Def.'s Ex. 11 at 60:15-61:11. Whether Mr. Adkins gave them Plaintiff's cell phone or another number form her personnel file is unclear. Plaintiff denies that the MRO ever contacted her cell phone number. Pl.'s Resp. Br. ¶ 44. ODOC does not dispute that none of its personnel contacted Plaintiff regarding the MRO's inability to reach her. Pl.'s Resp. Br. ¶ 3.

The MRO provided a specimen result certificate to Mr. Giudice showing that Plaintiff tested positive for amphetamines and that the MRO was unable to contact the donor. Def.'s Ex. 25. Mr. Guidice informed Mr. Adkins and Mindy Simon (another ODOC employee) that the drug test was positive, but did not provide any context or identify which drug registered the positive result. Def.'s Br. ¶¶ 54-57. Mr. Adkins testified that he told Mr. Guidice and Ms. Simon that Plaintiff took an amphetamine medication that could show up on the test results, and he believes he told them before the results came back. Pl.'s Ex.

4

3 at 58:18-60:3.

Under ODOC policy, a positive drug test results in automatic termination under. Def.'s Br. ¶¶ 52-57. Plaintiff was terminated on January 25, 2024 due to her failed drug test. *Id.*

Plaintiff testified that, following her termination, she applied at several jobs. Pl.'s Br. ¶ 6-8. She obtained employment in August or September 2024 at a restaurant and worked at several other jobs since that time. *Id.* Plaintiff first started applying for jobs in May 2024, approximately four months after her termination, and she voluntarily left employment from at least one job. Def.'s Resp. Br. ¶¶ 3-7.

In her Amended Complaint, Plaintiff asserts that ODOC unlawfully terminated her based on an actual or perceived disability and failed to accommodate her disability in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Oklahoma Anti-Discrimination Act. ODOC moves for summary judgment on the claims, arguing there is no evidence the ODOC acted with a discriminatory intent or failed to provide a reasonable accommodation. Plaintiff moves for summary judgment precluding ODOC from presenting the affirmative defense of failure to mitigate damages, arguing that ODOC cannot meet its burden of proof.

### *Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is

'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)).

Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

### Discussion

"The Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., forbids employers receiving federal funds from discriminating against their disabled employees." *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1187 (10th Cir. 2023). Plaintiff alleges that ODOC violated the Rehabilitation Act in two ways: First, by terminating her employment because

of her disability, and second, by refusing to provide a reasonable accommodation for her disability. Each claim is addressed in turn.[1]

### A. Discrimination/Disparate Treatment Claim

To establish a prima facie case of unlawful discrimination under the Rehabilitation Act, a plaintiff "must show: (1) he is disabled; (2) he is qualified to perform the essential functions of the job with or without accommodation; and (3) he suffered an adverse employment action because of his disability." *Id.* at 1197. ODOC does not dispute the first two elements. The third element requires Plaintiff to show that she was fired "because of" her disability, which requires proof that the employer "acted with a discriminatory animus against her because she had a disability." *Aubrey v. Koppes*, 975 F.3d 995, 1014 (10th Cir. 2020). "A plaintiff may prove discriminatory animus through either direct or circumstantial evidence, the latter of which is analyzed under the *McDonnell Douglas* burden-shifting framework." *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021).

At the first step of the *McDonnell Douglas* burden-shifting framework, the plaintiff must "raise a genuine issue of material fact as to each element of her prima facie case." *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 989 (10th Cir. 2021). "At the summary judgment stage, this burden is neither onerous nor perfunctory." *Hampton*, 87 F.4th at 1198 (quotation marks omitted). The plaintiff "must show that the circumstances surrounding

---

[1] "Disability discrimination claims under Section 504 of the Rehabilitation Act are governed by the substantive standards for disability discrimination claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12111 et seq." *Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 931 (10th Cir. 2024). Additionally, "if a plaintiff's disability discrimination claim fails under the ADA, it fails under the OADA." *Id.* Thus, Plaintiff's OADA claim depends on whether she can succeed "under the Rehabilitation Act and ADA framework." *Id.*

her termination give rise to an inference that it was based on her disability[,]" which "requires some affirmative evidence that the disability was a determinative factor in [the employer's] decision." *Edmonds-Radford*, 17 F.4th at 990. If the plaintiff can establish a prima facie case, the burden shifts to the employer "to offer a legitimate, nondiscriminatory reason for the termination." *Id.* If the employer offers a satisfactory reason, the burden shifts back to the plaintiff to show a genuine issue as to whether the employer's "justification for terminating her was a pretext for disability discrimination." *Aubrey*, 975 F.3d at 1015.

> A plaintiff may show pretext by demonstrating the proffered reason is factually false, or that discrimination was a primary factor in the employer's decision. This is often accomplished by revealing weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence.

*Id.* (quoting *Lincoln*, 900 F.3d at 1193). Importantly, "in assessing pretext, this Court examines the facts as they appeared to the decisionmakers" and "cannot second-guess [the employer's] business judgment—it matters not if [the employer's] reasoning was correct, just whether it honestly believed in the reason for the termination." *Edmonds-Radford*, 17 F.4th at 991.

Here, ODOC argues that the positive drug test is a legitimate, nondiscriminatory reason for the termination and Plaintiff cannot raise a genuine dispute as to the third element of the prima facie case or pretext. Plaintiff initially counters that proceeding through the *McDonnel Douglas* burden shifting framework is unnecessary because she has offered direct evidence that she was terminated "because of" her disability. "Direct

8

evidence is evidence from which the trier of fact may conclude, without inference, that the employment action was undertaken because of the employee's protected status." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008). "Direct evidence of discriminatory animus is rare" but can include "an employer's facially discriminatory policy or an oral or written statement showing a discriminatory motive." *Herrmann*, 21 F.4th at 678.

Plaintiff argues that terminating her based on a drug test that was positive for amphetamines is direct evidence of discrimination because Mr. Guidice, the HR employee that received and reported the results to his superiors, knew Plaintiff was taking a prescription amphetamine medication to treat her ADHD and knew the MRO was unable to contact the donor. "But the fact that [ODOC] fired [Plaintiff] for a positive drug test is a far cry from direct evidence of discrimination based on alleged disability." *Turner v. Phillips 66 Co.*, 791 F. App'x 699, 711 (10th Cir. 2019) (quotation marks omitted).[2]

In *Turner,* 791 F. App'x at 702-03, the plaintiff brought a disability discrimination claim against his employer after he was fired based on a drug test that was positive for amphetamines. The plaintiff had discussed the positive result with the MRO and provided a letter from his doctor describing over-the-counter medications he was taking for unspecified medical conditions. *Id.* The plaintiff had also provided a second sample that was negative and a hair sample that was negative. *Id.* The district court granted summary judgment to the employer because the plaintiff had no evidence that the stated reason for

---

[2] Unpublished cases are cited for their persuasive value.

the termination – the positive drug test – was pretextual, and the Tenth Circuit affirmed. On appeal, the Tenth Circuit specifically rejected plaintiff's argument that his termination based on a positive drug test was direct evidence of discrimination. *Id.* at 710-711.

Similarly, here, Plaintiff's termination based on a positive drug test is not direct evidence of discrimination. ODOC's policy mandates termination if an employee tests positive for drugs and Plaintiff tested positive for drugs. Even if ODOC was aware that Plaintiff uses a prescription medication, that does not change the fact that the MRO – the person who exclusively interprets the drug test –was unable to verify the lawful use of any prescription medication and returned a positive result. Under these circumstances, Plaintiff's termination based on a positive drug test does not directly prove that Plaintiff was discriminated against because of her disability. *See Herrmann*, 21 F.4th at 678 (notice of intent to separate from employment stating that employee was unable to work due to medical reasons and had exhausted her leave was "benign" and "was not direct evidence of discriminatory animus").

Without direct evidence of discriminatory animus, the *McDonnell Douglas* framework applies. Assuming without deciding that Plaintiff can raise a genuine factual dispute as to the prima facie elements, ODOC "has satisfied its exceedingly light burden to provide a legitimate, nondiscriminatory reason—the failed drug test—for Plaintiff's termination." *Turner*, 791 Fed. Appx. at 710-711. Plaintiff must therefore raise a genuine issue as to whether the reason for the termination was a pretext for disability discrimination.

To show pretext, Plaintiff argues that ODOC failed to follow its own for-cause drug testing policies, which state that the local human resources coordinator is responsible for

10

"[a]ssisting the MRO in contacting the employee for purposes of verification" and the coordinator must make their own attempts to contact the employee "[w]hen contacted by the MRO." Plaintiff notes that Mr. Guidice never contacted Plaintiff despite knowing that the MRO was unable to make contact and Mr. Adkins provided an additional phone number to the MRO but did nothing else.

As to Mr. Adkins, he is not the local human resources coordinator and the policy therefore did not require him to make an independent attempt to contact Plaintiff. As to Mr. Guidice, the MRO did not request his assistance in making contact with Plaintiff. There is no evidence suggesting that Mr. Guidice had reason to doubt the MRO's attempts to contact Plaintiff or acted with an ulterior motive by relying on the MRO's determination. Although Mr. Guidice and Mr. Adkins perhaps could have done more, the evidence does not support a finding that the ODOC's reason for the termination is inconsistent, contradictory, or false. Rather, the evidence indicates that ODOC "consistently believed in the accuracy" of the positive drug test and terminated Plaintiff for that reason. *Turner v. Phillips 66 Co.*, No. 18-CV-00198-GKF-FHM, 2019 WL 1434659, at *15 (N.D. Okla. Mar. 29, 2019), aff'd, 791 F. App'x 699 (10th Cir. 2019); *see also Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 900 (10th Cir. 2017) (plaintiff could not show pretext where employer relied in good faith on notification from insurance company that plaintiff suffered from substance abuse).

As additional evidence of pretext, Plaintiff challenges Mr. Adkins' decision to seek a for-cause drug test in the first place. Plaintiff contends that Mr. Adkin's justification for seeking the for-cause drug test has shifted because he initially sent an interoffice message

11

describing an odor of marijuana in Plaintiff's office, but when completing the for-cause drug test form, he described the odor of marijuana as well as negative performance patterns and frequent absences. However, "[p]roviding additional justifications for termination without abandoning the primary reason for termination does not, without more, establish pretext." *Wise v. DeJoy*, 71 F.4th 744, 753 (10th Cir. 2023). Because Mr. Adkin's primary reason for requesting the for-cause drug test has not changed, this argument fails to show pretext. ODOC's conduct "may have been unfair or an example of poor business judgment, but such circumstances are not sufficient to show that the employer's explanation is unworthy of credibility." *Herrmann*, 21 F.4th at 680 (quotation marks omitted). There is insufficient evidence to raise a triable factual issue as to whether ODOC honestly, even if mistakenly, believed that Plaintiff tested positive for drugs.

Summary judgment is required "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Reviewing the record as a whole, and resolving all factual disputes in Plaintiff's favor, no rational juror could conclude that Plaintiff was terminated because of her disability, as opposed to her positive drug test result. ODOC is therefore entitled to summary judgment on the disparate treatment claims asserted under the Rehabilitation Act and the OADA.

**B.  Failure to Accommodate Claim**

Federal law defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Hampton*, 87 F.4th at 1191 (citing 42 U.S.C. §

12112(b)(5)(A).). To establish a prima-facie failure to accommodate claim, a plaintiff must show "1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) the [employer] refused to accommodate her disability." *Aubrey*, 975 F.3d at 1006. "Unlike a disparate-treatment claim, a failure-to-accommodate claim does not require proof of a discriminatory animus—any failure to provide reasonable accommodations to an otherwise qualified individual will be sufficient." *Edmonds-Radford*, 17 F.4th at 992.

Although its argument is not a model of clarity, ODOC does not appear to be disputing the first or the third elements of the prima facie case.[3] Instead, ODOC suggests that Plaintiff's claim fails at the second and fourth elements because the accommodation Plaintiff requested – that lawful prescription medication be considered when evaluating her drug test results – was made available and she "refused" to participate in the process. *See* 29 C.F.R. § 1630.9(d) ("An individual with a disability is not required to accept an accommodation….However, if such individual rejects a reasonable accommodation…that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified.").

---

[3] To the extent ODOC's brief could be construed as challenging the third element, the Court finds that Plaintiff has created a triable issue of fact as to whether she requested a plausibly reasonable accommodation. Plaintiff has pointed to evidence indicating that ODOC was previously notified that she took a prescription amphetamine medication to treat ADHD, Plaintiff told Mr. Adkins at the time of the drug test that she was utilizing a prescription medication that could trigger a positive result, and Mr. Adkins informed Mr. Guidice and Ms. Simons of the medication use. Moreover, the fact that ODOC's written policies provide a process to account for the lawful use of prescription medication indicates that the requested accommodation was plausibly reasonable.

ODOC's contention that its policy provided employees with an opportunity to provide information about their prescription medication use and Plaintiff refused or rejected this opportunity fails to construe the factual record in Plaintiff's favor. Contrary to ODOC's characterization, there is evidence indicating that Plaintiff was not given the opportunity to verify her prescription medication use because the MRO did not actually contact her, despite having the chain of custody form that included her cell phone number. Further, there is evidence indicating that both Mr. Adkins and Mr. Guidice were aware that the MRO was unable to make contact but made no effort to advise Plaintiff that she needed to contact the MRO. Construed in Plaintiff's favor, this evidence is sufficient to create a triable issue as to whether Plaintiff "rejected" the accommodation or was not actually given an opportunity to verify her prescription use due, at least in part, to ODOC's own inaction.[4] Because ODOC either does not dispute or has failed to establish that Plaintiff cannot succeed on the elements of her failure to accommodate claim, summary judgment is not warranted.

### C.  Failure to Mitigate Defense

"Employees claiming entitlement to backpay and benefits are required to make reasonable efforts to mitigate their damages." *Carrasco v. Centura Health Corp.*, No. 19-CV-00357-LTB-KMT, 2021 WL 4913983, at *2 (D. Colo. June 18, 2021) (citing *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993).

---

[4] ODOC's statement of material facts indicates that Plaintiff filed a complaint with the Civil Service Division but voluntarily withdrew the complaint prior to the hearing or scheduled mediation. ODOC does not develop any specific argument premised on these facts and instead focuses on the for-cause drug testing process.

The "burden of showing that the employee did not exercise reasonable efforts to mitigate damages" falls on the employer. *McClure v. Indep. Sch. Dist. No*. 16, 228 F.3d 1205, 1214 (10th Cir. 2000). "To satisfy its burden, the employer must establish (1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position." *Id.* (brackets and quotation marks omitted). Importantly, the employer is "required to satisfy both prongs of the above two-part test." *Aguinaga*, 993 F.2d at 1474. "If the employer fails to satisfy the first prong, i.e., that there were suitable positions available, then the individual mitigation efforts of the claimant are 'simply irrelevant.'" *Carrasco*, 2021 WL 4913983, at *2 (quoting *Aguinaga*, 993 F.2d at 1474); *see also Wilson v. Union Pac. R. Co.,* 56 F.3d 1226, 1232 (10th Cir. 1995) ("Mr. Wilson's general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available.").

Plaintiff contends ODOC has not identified evidence sufficient to meet its showing on either the first or second prong of the failure to mitigate defense. With respect to the first prong, ODOC does not identify any suitable positions that were available and for which Plaintiff was qualified. Instead, ODOC argues that Plaintiff's educational and employment background permit the inference that suitable positions were available in the area and, additionally, it is relieved of its burden to prove the availability of suitable positions if the plaintiff made little to no effort to secure employment. *See, e.g., Zisumbo v. Convergys Corp.,* No. 1:14-CV-00134, 2020 WL 3546794, at *10 (D. Utah June 30,

15

2020).

Although "[m]itigation of damages is a fact-intensive issue" that is not typically resolved at the summary stage, *Carrasco*, 2021 WL 4913983, at \*5, that does not relieve ODOC of its burden to identify evidence sufficient to create a genuine dispute of material fact regarding the essential elements of its affirmative defense. ODOC's conclusory assertion that Plaintiff could have found employment because she is well-educated and previously worked in an entry level position is not sufficient to meets its burden of establishing that suitable positions were available. *See id.* (denying defendant's motion for summary judgment because it failed to "establish not only that jobs were available, but also that the jobs were suitable."); *Hull v. Arvest Bank Operations, Inc.*, No. CIV-16-69-D, 2017 WL 2790557, at \*3 (W.D. Okla. June 27, 2017) (granting summary judgment to plaintiff because "Defendant presents no facts and identifies no potential evidence that would establish the availability of suitable positions after Plaintiff's termination that he failed to apply for or otherwise pursue"); *Smith v. Millennium Rail, Inc.*, 241 F. Supp. 3d 1183, 1207 (D. Kan. 2017) (denying defendant's unopposed motion for summary judgment because it failed to present "evidence showing the availability of suitable positions for which Smith was qualified"); *Equal Emp. Opportunity Comm'n v. DolGenCorp, LLC*, No. CIV-21-295-GLJ, 2024 WL 402921, at \*10 (E.D. Okla. Feb. 2, 2024) (granting summary judgment to plaintiffs "[b]ecause Defendant fails to establish suitable positions available").

Further, ODOC has not identified any binding precedent indicating that an employer is relieved of its burden to identify suitable positions where the plaintiff has purportedly made little to no effort to secure employment. ODOC's remaining arguments attack the

reasonableness of Plaintiff's job search, an issue which is not relevant when the defendant has failed to establish the first prong of the test. *Aguinaga*, 993 F.2d at 1474. Accordingly, on this record, Plaintiff is entitled to summary judgment on the defense of failure to mitigate damages.

### *Conclusion*

As outlined above, Defendant's Motion for Summary Judgment is granted in part and denied in part. Plaintiff's Partial Motion for Summary Judgment is granted.

IT IS SO ORDERED this 28th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE